**Gideon POLLESCHE, Plaintiff and Appellant,**

v.

**K-MART ENTERPRISES OF UTAH, INC., et al., Defendants and Respondents.**

No. 13384.

Supreme Court of Utah.

March 18, 1974.

Leon A. Halgren, of Ryberg, McCoy & Halgren, Salt Lake City, for plaintiff and appellant.

Rex J. Hanson, of Hanson, Wadsworth & Russon, Salt Lake City, for defendants and respondents.

HENRIOD, Justice:

Appeal from a judgment of dismissal at the end of plaintiff's testimony in a jury case of no cause of action, for the reason assigned by the trial court that plaintiff's own testimony, as a matter of law reflected no compensability because of plaintiff's contributory negligence. Affirmed, with costs to defendant.

The only evidence adduced was that of the plaintiff himself,—most of which was elicited on direct examination,—which plus some cross-examination,—justified the trial court's conclusion.

Here it is, accurately abstracted, we believe, which we must review with its virtues but also with its infirmities, contradictions and concessions, since the plaintiff's weakest link in the chain of circumstance, is the trial court's strongest link in the chain that supports its conclusion:

The plaintiff, 43, at age 26 came from East Germany in 1955, in good health, finding employment immediately, at one job for a short period, but another lasting 11 years with a mattress company, at about which time he seemed to acquire what appeared to be an almost congenital and ma-

lingering penchant for becoming the plaintiff in an almost incredible series of automobile accidents,—most of which involved permitting his rear end to get too close to drivers behind him,—or drivers behind him having penchants to attack his rear end. These incidents were punctuated by the instant case, whose fundamental basis allegedly was a falling on his fundament by stepping on a spool of thread. Three of the six accidents upon which he filed complaints happened before the spool bit here, and two thereafter, representing a rather novel anachronism as to time or reason for the incidents.[1]

In November, 1966, he settled a case for $8,000 involving an accident which he alleged resulted when his adversary ran a stop sign. Two weeks later he claimed back injuries allegedly caused when a milk truck rear-ended him. The result: $10,000 settlement. The next year, in 1967 he worked as a meter reader, didn't like the work, so applied for "rehabilitation" and the taxpayers accommodated him by paying for his schooling at a local high school. In December of that same year, 1967, he was rear-ended by another car, allegedly injuring his back as was previously the complaint, shortly after which he quit work "because of numbness in my left leg and severe pain in my fusion." In August, 1968, he had surgery, so he testified, for a broken part of his previous fusion,—after which he went back to work as a meter reader. About four to five months later, on January 20, 1969, while reading meters, came the spool of thread incident, the backbone basis for this lawsuit,—for which injuries he concedes the Industrial Commission already has paid him $12,000, and his claim with that agency still seems to be apending,—he having testified that he was at time of trial receiving disability insurance.

After this spool of thread episode, Pollesche claimed that on December 22, 1971, again he was hit in the rear end by anoth-er car and received a settlement of $2,100 for that saga—three years after the spool of thread chapter and one month before he filed this spool suit on January 10, 1972. Four months to the day after that settlement, he claimed he was rear-ended again, receiving back, neck and fusion pains, for which it appears he is receiving compensation. The above chronology was evoked on direct examination, and is abstracted because, if for no other reasons 1) he voluntarily evoked it and 2) nobody objected to it and 3) it has a sort of credibility facet at least as reflective as neck pains and fusions or spools of thread.

In virtue of what Pollesche conceded above, he made no friends and seemed to influence not one or more people when, in abstract form, and in the abstract, he said that:

On January 20, 1969, at noon, he, a meter reader, having gone through a door a dozen or better times before, entered through it which swung only westward, aside a similar door swinging only eastward, all at defendant's supermarket. The door had a glass window which anyone could use to see beyond into a sort of storage room, with a passageway. He said he could see through this window and that the aisle beyond was "filled with cardboard boxes and steel cabinets,"[2] although he said that he looked through the window and could see nothing,—although he conceded there were electric lights burning at the time in the passageway. He said he stepped in with his left foot first, then his right foot second and stepped on something in the passageway which "I imagine was a spool of thread because I seen it lying there,"—when he fell down.

He contended that he was severely injured. Nonetheless, the same day he arranged for a photographer to take pictures of the scene, went to the store manager to report the incident, went to City Hall to record the incident, called his doctor, who was out of town, called his lawyer, who

---

1. In fairness, counsel in this belated case was not counsel in the others, so that no inferences should be indulged in any way.

2. Which the physical evidence and pictures he took the same day did not reveal.

was in town, and then met the latter at the store that afternoon, which advocate didn't get around to filing this suit for three years, during which time plaintiff had two rear-ends and a sore back both of which he settled for money *after* the accident involved here but before filing this suit. As to this incident, he testified by question and answer as follows:

Q. "Did you observe anything when you fell?" A. "Yes,—I seen pencils there, batteries there," and the court: "Pencils, and what?" A. "Pencils, flashlight batteries. I seen a spool of thread . . ." Q. "What color was the thread?" A. "I recall some white ones and some black ones,"—and "I felt a tingling pain and a sharp pain in my low back." He also said after being asked what he saw on entering the passageway: "Yes. I noticed one sign saying this area had to be free of emergency at all time," of merchandise. "I saw steel cabinets, cardboard boxes and merchandise,"—and Q. "Where was this merchandise etc. . . ." and A. "Oh across was one)? (a cabinet lying upside down) "The manager said they were remodeling," (although the pictures taken by the plaintiff on the same day showed no evidence of this but they show the passageway). He said the pictures do not show the condition when he fell.

On cross-examination he said that:

It seemed to him there could have been signs on the door. Pictures show a clear, painted, large lettered sign saying "Employees only. Avoid accidents. Stop-Look before opening door." He said he stopped and looked through the window, that there were lights burning in the hall but not as light as in the main store; that he opened the door "not too fast because you never know if someone is in the back" and he didn't want to hurt anybody, so "I just opened it slightly." "I was not looking for some merchandise on the floor or anything;" that "I didn't know I was going into an area reserved for employees only, but for me also."

He further testified that he took two steps and on the second step stepped on something and fell. He said on deposition that he stepped on something on the first step, and says now that that was the fact. Also he said in his complaint, and to his doctor, it was a spool of thread and says now it might have been a pencil or battery "because I seen them lying around there." He said on the date of the accident the door was an inch or more up from the floor but "not now anymore. They changed it now . . . They put something on the bottom now." (The picture obviously shows nothing has been put on the bottom, and the space between the door and the floor is less than an inch.) He said it looked to him that "they put some kind of a stopper, or something" and he made such observation "maybe a half year ago when I had to go by there."

He saw two girls in the hallway who were 10 to 15 feet away. "They didn't come over to help me." "I had a lot of pain." "I was hoping they weren't looking." "My nature, even if I'm hurt, I still wouldn't like to have a woman helping me." He said the girls saw him, but didn't come over or offer to help, and that they said nothing. He laid off two or three days and resumed work off and on until October 1969, when he was let out.

With respect to the obvious discrepancies in his testimony, among other things, as to the steps he had taken before falling, he said he had talked the case over with his lawyer *after* his deposition and discussed with him the fact that if he had taken only one step, anything on the other side of the swinging door would have been swept aside. He changed his testimony and signed this deposition taken a year before, on June 6, 1973, four days before the trial, to say he stepped on the spool on the third step through the door instead of the first one. He said at the trial that he couldn't open the door all the way because there was a steel cabinet there.

■ To permit a jury to conjecture on such evasive, contradictory, self-serving and double-talk testimony, would condemn our jury system and the intelligence of not only the veniremen but that of the trial court.

■ There would be no useful purpose in citing supporting authorities to support the common sense rule that he who should look and having the clear onus and ability to see, does not see, or he who looks and sees, but ignores such clear onus and ability, is guilty of contributory negligence as a matter of law, albeit normally the determining of such negligence is the prerogative of the jury.

CALLISTER, C. J., and TUCKETT, J., concur.

ELLETT, Justice (dissenting):

I am unable to agree with the prevailing opinion for the reason that it seems to be based upon the idea that the plaintiff has won a number of cases in the past and, therefore, it's time for him to lose.

It may be that the plaintiff, appellant herein, is a professional litigant and should not recover in this case. However, we ought to consider his claim on the merits and not look to see how many times he has sued other defendants.

The trial judge dismissed plaintiff's case as soon as plaintiff had rested. In such a situation we should view the evidence in the light most favorable to the plaintiff's cause. The trial court could properly take the issue from the jury and rule against the plaintiff only if the evidence is of such a nature that all reasonable minds would have to find as the judge did.[1]

In this case if what the appellant testified to is true, I do not see how the judge can take the case from the jury.

The only evidence before the court shows that the appellant was required to pass through a passageway between a well-lighted store and a more dimly-lighted storeroom. The appellant had gone through this passageway a number of times in reading the meter of the defendant and was required to traverse the passageway on the day on which he was hurt. He had observed a sign which said that the passageway was to be kept free of merchandise, and never in the trips he had made before had there been any merchandise on the floor. The window in the swinging door was of such a height that plaintiff could not see the floor within ten feet of the swinging door. He testified that as he entered the passageway, he stepped on a round object, either a spool, pencil, or a flashlight cell, and fell, receiving injuries.

I think the court erred in deciding that plaintiff was negligent as a matter of law, and I would reverse this case and remand it with directions to let a jury pass on the question of negligence of the defendant and contributory negligence of the plaintiff, if any such there be. The matter of the veracity of the plaintiff is for the consideration of the jury and not the trial court. I would award costs to the appellant.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of ELLETT, J.

---

1. Hindmarsh v. O. P. Skaggs Foodliner, 21 Utah 2d 413, 446 P.2d 410 (1968).